Good morning. I just want to make sure everyone's ready to go. My name is Alisa Kaufman and I represent the petitioner Patricia Ikeni. I'll make sure you can hear me. I'd like to reserve three minutes for rebuttal. Thank you. So this is a relatively simple credibility case because the immigration judge did not in her adverse credibility finding, both with respect to identity and as to the merits of the claim. Patricia Ikeni is a political activist who served on a leadership council for the Ija tribe in southern Nigeria. She's a member of that tribe and was also on an executive council for the political group. The immigration judge denied all relief and specifically based that on Patricia's failure to provide a Nigerian passport. Patricia explained that her boss had retained her passport and that she was afraid to ask the Nigerian government   for a new one. Nonetheless, the immigration judge rejected ten documents that Patricia provided to establish her identity and corroborate her claim and didn't provide any reasons, really material reasons, for rejecting those documents. Let's just take the first issue which is identity. She claims she was unmarried and never married Mr. Wong who had sent her to Hong Kong for some surgery. On the other hand, she presented some medical records in which the name appears Patricia Ikeni Wong, number one. Number two, she presented a driver's license which has her name as Mrs. Ikeni. One of the documents that she presented was that she was unmarried. Why is that not sufficient documentary evidence upon which the IJA can find that she hasn't proved her identity because on the one hand she says she's married, on the other hand she says she's not married? And that is, of course, an issue that goes to the heart of the matter. He gave her an opportunity to explain these inconsistencies and he finds that she didn't explain them to his satisfaction. What's wrong with that finding? Well, Your Honor, first of all, it's our position that whether she's married or not is immaterial to the claim. Her claim has to be ---- It's material to her identity. Well, not as to whether she is Patricia Ikeni, a political activist. However, I'd like to address her explanations. First, she explained that Nigerian driver's license was a typographical error. And as this Court has held in Kumar v. Gonzalez, which is cited in the 28J letter, clerical errors which don't go to the heart of the claim or are minor inconsistencies don't serve as a basis to find someone not credible in an asylum hearing. Secondly, she did provide a reasonable explanation. She said that when she was in Hong Kong, Mr. Wong held her out as his wife so that she could get the information that she had, it appears, no right to be in Hong Kong and that he decided to help her. She was too sick to deal with any of the documents and the forms at the hospital and, in fact, had to sit outside because she was incontinent and had a Foley bag. The IJ specifically made a finding that her explanation as to Wong as her name was, quote, implausible. Yes, and that Was that arbitrary and capricious? It was, Your Honor. The record is replete with examples about how this judge relied on her own personal knowledge about Hong Kong. The judge was from Hong Kong and As to the color of the buses. The color of the buses, as to being how to be admitted into the hospital. The judge said, I'm going to take judicial notice of the fact that you can't be personal knowledge and were inappropriate, even as Respondent concedes, for her to take judicial notice of. The immigration judge was Before your time runs too far, I want to tell you what's bothering me about this case. Yes, please. It's related to what's bothering Judge Bea. In her initial airport interview, she says some things that she clearly contradicts later, and she explains why she I have to say I find the story that Mr. Wong, out of the goodness of his heart, would take her to Hong Kong for this is more readily explained if they are, in fact, husband and wife. It's not impossible, of course, that it happened exactly as it did. And were I to look at this case, were I the IJ, this would be a hard one for me on credibility. But the IJ basically stops at step one, holding that she has failed to prove her identity. As I read the record, she was, your client was basically sandbagged on this one. That is, at an early stage, the IJ says employment documents will be sufficient to prove identity. Then when she comes in with employment documents, we have a different governmental attorney. That government attorney objects strenuously to the use of employment documents, and the IJ says these aren't good enough. Exactly. Now, the furthest I think I would go with this case is simply to remand to the IJ to look at the IJ's own rules as to what's acceptable evidence, because I think she got tricked on that one, tricked maybe too strong, because that implies deliberate malice. I think she was misled, perhaps inadvertently. I agree, Your Honor. Actually, the judge said without a passport, any other documents won't be considered. But that's what the judge says later, not what the judge says a year and a half earlier when the judge is saying what will suffice to prove identity. Exactly. And she did provide ten documents to establish identity. The problem was that the government attorney objected to their authenticity and to the inability to cross-examine the declarants. And as this Court has found in Vachion v. Mukasey, 508 F. 3rd, 1179, that the applicant's own testimony may be sufficient to authenticate those foreign documents. You're not required to have a passport to establish your identity. There are many other ways to do that, including, as this Court noted on Monday in Kaluma, specific details concerning one's heritage, one's family, one's identity, where one grew up, all of which the petitioner consistently and repeatedly testified to. What about her denial at the airport that she was a half-sister of Omo and a sister-in-law of Marwaya, and the explanation she gave, which is I didn't want to get them in trouble? Which makes sense, given that she's using their passports. But then the I.J. says it makes sense except for the fact that neither Omo nor Marwaya showed up at the hearing to substantiate that they were indeed brothers related to I. Kenny. Is that an arbitrary basis upon which to find a lack of credibility? I believe it is arbitrary, given that the female was about to give birth and her husband wanted to be there with her when she went into labor. But, again, these are not material to her identity. Can I ask you this? Where was the hearing held? The hearing was held here in San Francisco. And where was the... They lived in the Sacramento area, which is a... So we're not that far away. Well, but it's at least two hours, and one never knows when someone goes into labor if it's going to be a two-hour labor or a 24-hour labor. But I think what we need to focus on are what the material issues are here. And if we assume that identity is one of them, she did provide plenty of evidence to establish her identity. The judge just focused on one clerical error and what happened in Hong Kong. I understand the Court's concern about why Mr. Wong would provide this. And it's an interesting question, but it's not material to her claim, which is the political activity. And it's speculative and conjecture to assume that even if she was married to Mr. Wong, that that would change her position in Nigeria in some way. There was no evidence established that she had any right to live in Hong Kong. All of that's really conjecture. The government could have done some investigation. In fact, they submitted to forensics that medical document and the driver's license, but they concealed the results at the forensics. Well, concealed. I'm not sure they concealed, but they certainly didn't come back with the results. Right. In addition, they could have compared the fingerprint on the driver's license to the fingerprints she submitted for biometrics, but they didn't do that either. You've saved three seconds instead of three minutes, but I'm afraid we helped you to do that. We'll make sure you get a chance to respond. Good morning again. Once again, Charles Kander on behalf of the Attorney General. Your Honor, I think there's some confusion about what is it that, what is at issue here? There's an adverse credibility determination. That adverse credibility determination is based on a number of factors. First, it is the, what I think Judge Fletcher noted is a troublesome story in its own right. It's a somewhat implausible story as Ms. Ikeni told it. Second, there are contradictions between the airport interview and her testimony. Third, the IJ noted specifically that on cross-examination, Ms. Ikeni became nervous. She gave vague answers and was hesitant. Fourth, there's this issue of is she married, is she not, what's her relationship to Mr. Wong? And finally, there's the failure to corroborate her testimony with easily available evidence. That is her brother. Just to get that out of the way right quickly. Now, the brother was available by telephone, correct? The brother, there is a number, any number of ways the brother could have corroborated Ms. Ikeni's testimony. He could have been available by, he could have been contacted by telephone. Well, now my understanding is the judge wouldn't allow him to testify by telephone. Isn't that right? No, the disallowance of telephonic testimony relates to a doctor and a member of Ms. Ikeni's political group in New York. And you think that the IJ would have allowed the brother to testify by telephone? I think there was some question about what, you know, is he available? But he's got two, there's not a, that's something. Didn't the IJ make a very clear ruling that he was only going to allow expert witnesses by telephone, that Mr. Gold was not an expert witness? And if Mr. Gold was an expert witness, why would the brother be an expert witness? Well, even so, I don't think that's, that's not, that wasn't something that the petitioner pressed at the hearing. The important thing is that this, there, identity was raised as an issue in July 1999. The individual, the merits hearings in this case took place over two days in May of 2002. Yeah. And you're leaving out an intervening hearing at which the IJ says employment documents will be fully sufficient to prove identity. But it's identity as to is this Patricia Ikeni or is, is it, you know, Patricia Ikeni who is not married and has no personal relationship with Mr. Wong or Patricia Ikeni? That's none of the. Well, how do you answer the point that was made, I thought, quite effectively by Ms. Kaufman, that whether she's married or whether she's not married doesn't go to the issue of whether she's Patricia Ikeni? Specifically, whether she's married or not, in the abstract, may not, may not matter, except that, as the immigration judge noted, and consistent with this, this Court's opinion in Rajender Singh, 439 F3rd 1100 at page 1108, an inconsistency goes to the heart of a claim if it concerns events central to why an alien fled. But what is the inconsistency as to whether she is Patricia Ikeni on the issue of whether she's married to Wong or not married to Wong? Because the. I mean, if there's another person running around with the name Patricia Ikeni Wong, then you have something. Is that, is there any proof of that? No, Your Honor, it's not is there another Patricia Ikeni. It's not is this Patricia Ikeni. The question is, why is she, you can't divide up the reasons for why, that the immigration judge gave for the adverse credibility determination, and then, you know, look at each of them in isolation. But we do, we have to, we have to see if there's a flat contradiction, if it goes to the heart of the matter, whether she was given a chance to explain it, and also whether a reasoned explanation was given for the adverse credibility finding as to each of the elements. Well, first of all, Your Honor, I think that that is inconsistent with the substantial evidence review. It's review on the record as a whole. And the record as a whole is not, you know, is this statement and this statement a contradiction, or is this particular, this alleged contradiction, is it just a typographical error? It's the record is in its fullness. Here, she arrives in the United States with no, with a fake passport, with someone else's passport. She says, she gives no indication that she's fleeing persecution. Instead, her statement at the airport interview is, Mr. Wong tried to force me to marry him. You know, I would be more receptive to the argument you made if the I.J. had said, I'm dubious about her identity, but even if I accept that she is Patricia Ikeni, I don't believe the rest of her story. But that's not what the I.J. says. The I.J. says she has not proved her identity. Go on. Mr. Cannon, I'd like to ask you, tell you my problem. How long have you been doing these cases? Since July. Well, you know, I've been doing them for years, and I've got to tell you, it's a general observation, that within the last two or three years, I.J.'s have suddenly started doubting the credibility of applicants for asylum. And I have to draw the inference that either an explicit directive went out, or the word got passed along the line, find them incredible, because it has become a pattern that the I.J. strives to find the petitioner incredible. Now, that makes me very dubious about the I.J. I see the I.J.'s now regularly striving, stretching, doing their best to find some little inconsistency. And it's very unimpressive. Now, I'd like to ask you about one thing that I believe the I.J. called a discrepancy. Do you remember how she was tortured in Ethiopia? I'm sorry, Your Honor. Do you remember how she was tortured? How Ms. Ikeni was tortured? What? How Ms. Ikeni was tortured? Yes. She's the petitioner. She was never tortured in Ethiopia. She's from Nigeria. Nigeria. And I don't believe there's any indication that she has ever been harmed in Nigeria, except for the new claim of female genital mutilation, which is not properly before this Court. Yes. Well, I may have a different case in mind. But in general, I regard these I.J. The word ought to get back to them. You can't get away with it. They're trying to insulate your decision to review by trumping up credibility things. And as to your cumulative argument, suppose one incident is worth a half, another a quarter, another quarter. You've got a whole, a half, quarter, quarter. But if each incident is worth zero, you get three zeros. And that seems to be the case here. Zero, zero, zero adds up to zero cumulatively. Your Honor, with all due respect, the immigration judge gave specific cogent reasons for why she found the petitioner incredible. Her testimony, her story itself on direct examination is facially implausible. Her story is, I was ill. Mr. Wong, out of the goodness of his heart, took me to Hong Kong. My company, because they thought I was a good employee, allowed me to do so. He paid for complicated medical procedures and supported my convalescence for seven months. When I returned, Mr. Wong, with whom I have no personal relationship. Well, not quite. No, she says, who tried to force me to marry him and I refused. She said that on cross-examination when her airport interview was brought up. On direct, there's nothing there. She specifically said it in the airport interview and then she said it again when the interview was brought up. She stuck to the story. Your Honor, on page 214 and 215 of the transcript, is there a personal relationship between you and Mr. Wong? No. There's no indication that she has, that there's. Her story itself, she returns back to Nigeria. Mr. Wong then takes her passport. Actually, he asks for her passport. She says, I don't have it. He says, can you bring it back? She brings it back. Why, I don't know. She doesn't provide a reason why would she do that. Gives him her passport and then he takes it. That's two years before she leaves. She never tries to get the passport from the government. Instead, it's, well, he's done so many good things for me, which apparently includes forcing me to marry him. Your time is running, and I just want to say, if the I.J. had said different things, if the I.J. had said more of what you're saying instead of simply saying she, focusing so heavily on the fact that she's not proved her identity, I wouldn't have the reaction that I do. This I.J. was, in the words of the BIA terse, I might apply somewhat different words to the behavior of the I.J. This I.J. was impatient, hectoring, bullying. This I.J. was not sort of the nicest I.J. in the world. And this I.J. misled, whether deliberately or inadvertently, I think inadvertently, misled the attorney for Ms. O'Kaney as to what would be appropriate identification documents. And then a year and a half later, when she shows up with precisely the documents that she'd been told would suffice, which is employment documents, and she showed up with a lot of them, when the government objected, the I.J. says they're not good enough. So it seems to me that it's only fair to allow her to go back, let's start over with what documents the I.J. will or will not accept, and then let the I.J. make whatever credibility finding the I.J. is going to do. What's wrong with that? Well, Your Honor, again, I disagree that, A, that the petitioner was misled, and, B, that it's the question of the I.J. I disagree that she was misled. Am I misstating the narrative as to what happened? No, you're not, Your Honor, except that it's not a question of is this Patricia I.Kaney. It's what is why are there – why does she have this – she goes by Patricia Wong. Why does she have this story that he forced her to marry her? Why does she not have a passport? Why does her brother, who could – not only could he appear over the course of one of the two days which the I.J. – excuse me, the immigration judge allowed the hearing to continue, but, B, he can't submit an affidavit, a statement of a penalty of perjury, even a letter, which is often sufficient in immigration cases to just say, this is my sister Patricia I.Kaney. She is married. She was married. But she's fleeing because of this reason. Well, how can you hold against what her brother does? I mean, sisters and brothers sometimes disagree. Sometimes they get into – they're alienated from each other. You can't just go on that basis. Your Honor, with respect, in this case, Ms. I.Kaney was, I believe, resigning with her brother, and it was – according to Ms. I.Kaney, it was her brother who sent the passport and the means by which she left Nigeria. So I don't think that – I think – I don't think that that characterization quite fits with the record. The immigration judge's decision is supported by substantial evidence. The petitioner should be denied. Thank you. Thank you. Response? Thank you. I hope I have more than six seconds. Well, you had zero seconds, the truth is. But let's start out with giving you a minute. We don't – you get to say what you need to say. Thank you. Just very quickly, the court is correct. The immigration judge specifically said, I do not accept testimony from lay witnesses. My colleague is looking for the site, but I do remember seeing that in the record. Secondly, she did not reside with her brother. He moved away to Sacramento. That's at the administrative record 169. I believe the issue about Hong Kong is a red herring that would not have come up if this immigration judge had not herself been from Hong Kong. The issue is identity, and then was her story about future persecution credible? And her testimony throughout the hearing was consistent. The only – as Judge Noonan pointed out, the only inconsistencies are in these two little documents, and the rest of it is all consistent. She explained that she was petrified that they were going to send her back to Nigeria at the airport and that she was afraid to get anyone in trouble who was in the U.S., specifically her relatives who had helped her. The immigration judge in her decision did not address eight of the documents which Patricia submitted to establish her identity. Is the immigration judge still in San Francisco? No. Okay. Not to my knowledge. There were eight other documents which the judge in her long decision does not address, and it's the decision that's particularly concerning to me because this court has repeatedly held that a judge must substantiate her adverse credibility findings either as to identity or to the merits of a claim with specific examples. And other than the typographical error, there aren't any examples. We would request a remand on that issue and also on the issue of female genital mutilation, which is addressed in the motion to remand. Okay. Thank you. Thank you very much. The case of McKinney v. Mukasey is now submitted for decision. Thank both sides for your argument.
judges: Noonan, Fletcher, Bea